Pearl H. Jackson v. Commissioner.
Pearl H. Jackson v. Commissioner
Docket No. 12751.
United States Tax Court
1948 Tax Ct. Memo LEXIS 138; 7 T.C.M. (CCH) 507; T.C.M. (RIA) 48134; July 14, 1948
*138 In 1942, 1943, and 1944, petitioner realized income from the operation of a rooming house and rents from houses owned by her. She kept simple single entry records of the rental proceeds received and the expenses incurred in connection with that business. Held, that petitioner's records substantially reflect her income and business expenses and that her tax liability for the taxable years should be determined on the basis thereof. Held, further, that petitioner did not fraudulently file her tax returns with intent to evade tax and that the 50 per cent fraud penalty may not be imposed. James P. Hill, Esq., for the petitioner. Edward L. Potter, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves the following deficiencies and fraud penalties for the *139 calendar years 1942, 1943, and 1944: Item
1942
1943
1944
Income tax deficiency
$840.54
$792.12
Income and victory tax
deficiency
$501.35
50% fraud penalty
420.27
250.68
396.06
Respondent rejected petitioner's returns, which were based on her books of account, and determined her tax liability and the deficiencies in question on the basis of her bank deposits after making certain adjustments thereto. He also determined that petitioner had fraudulently understated her taxable income with intent to evade tax and was subject to a 50 per cent fraud penalty under section 293(b) of the Internal Revenue Code. Findings of Fact Pearl H. Jackson, hereinafter referred to as petitioner, is an individual residing at 1215 Boulevard, Jacksonville, Florida. She filed separate tax returns for the taxable years before us with the collector of internal revenue at Jacksonville. During these years petitioner rented out several rooms in her home to roomers. In earlier years she operated boarding and rooming houses at 217 East Monroe Street and 303 Market Street in Jacksonville. Prior to 1942 she transferred the management of the latter *140 houses to her husband, R. W. Jackson, who operated them thereafter and paid her $200 a month pursuant to a written agreement between the parties. In 1943 she purchased a dwelling located at 205 East Monroe Street which was remodeled and rented in 1944. Petitioner maintained bank accounts at the Barnett National Bank and the Florida National Bank, both at Jacksonville, into which she deposited some of her rental receipts, the proceeds from certain sales of stock, and certain funds either borrowed by her from, or repaid to her by, members of her family. She drew checks on these accounts to meet personal and business expenses and also to repay some of the loans mentioned above. Petitioner's total deposits and withdrawals during the taxable years are set forth below: 1942
1943
1944
Deposits
$8,138.00
$8,938.71
$6,576.14
Withdrawals
7,068.97
4,999.35
8,373.43 Non-income funds in the amount of $4,262.84, $4,496.85 and $1,337.84 were placed on deposit in the respective years 1942, 1943, and 1944 and are included in the total deposits tabulated above. Petitioner kept record books in connection with the operation of the rooming houses during the taxable *141 years in which she entered all rental payments received and the cash disbursements made to defray maintenance expenses. Except for interest of $28.65 received in 1942, and dividends and interest of $114.25 received in 1944, all of which was duly reported in petitioner's income tax returns for these years, she had no source of income other than her rooming house business. As indicated by her business records, petitioner's rental receipts and operating expenses during the taxable years were as follows: 1942
1943
1944
Receipts
$4,496.25
$4,873.00
$6,693.50
Expenses
1,180.68
806.16
2,185.31
In her income tax return for 1942, petitioner reported total receipts of $4,481.20, expenses of $1,727.25, and net income of $2,656.85. In her 1943 return she reported total receipts of $4,870, expenses of $1,679.47, and net income in the amount of $3,190.53. Petitioner filed an income tax return for 1944 in which she reported total receipts of $6,693, expenses of $3,248.16 (including depreciation of $187.50), and net income of $3,559.09, using the tax table on page 2 of the return, Form 1040, to determine the tax due. Petitioner did not fraudulently understate her *142 taxable net income in these returns, having no intent to evade tax. Respondent in determining the instant deficiencies made no use of petitioner's business records but used the bank deposit method of computing taxable net income for each of the three taxable years. By calculating the total bank deposits, less returned checks and certain deposits conceded to be non-income items, respondent determined petitioner's gross income (net deposits) to be $6,770.60 in 1942, $5,161.86 in 1943, and $5,901.47 in 1944. Respondent examined all checks drawn on petitioner's bank accounts during this period and allowed certain expenditures paid by check as business deductions in the amount of $1,632.46 in 1942, $1,275.07 in 1943, and $3,032.87 in 1944. After making further adjustments for depreciation, living expenses, and including a $2,400 income item not reflected in the bank account in 1944, respondent determined petitioner's net income to be $6,196.58 in 1942, $4,945.23 in 1943, and $6,124.54 in 1944. Opinion ARUNDELL, Judge: Section 41 of the Internal Revenue Code provides that net income should be computed in accordance with the method of accounting employed in keeping *143 the books of the taxpayer, but that if such method does not clearly reflect income, the computation should be made in accordance with a method which the Commissioner believes to more accurately reflect income. Section 29.41-3 of Regulations 111 further imposes an obligation on the taxpayer to maintain such records as will enable him to "make a return of his true income." No question has been raised as to whether petitioner computed her net income in accordance with the method of accounting regularly employed in keeping her books. The principal question in controversy is whether her records clearly reflect her income. During the taxable years, petitioner kept single entry records of her income from rentals and the expenses paid in connection with that business. The respondent took the position that petitioner's books did not disclose her true income and proceeded to compute her gross income from her annual bank deposits and to determine the allowable business deductions from the checks drawn during the taxable period. The proof establishes that a substantial portion of the bank deposits in each year were items of a non-income nature, consisting largely of repayments of loans originally *144 made by petitioner to members of her family. These items serve to reduce the amount of the deposits to net figures which, in each of the three years, were less than the gross income reported on the respective returns. For example, petitioner's bank deposits in 1942 totaled $8,138. Of this amount, $4,262.84 consisted of non-income items, leaving a net balance of $3,875.16 of so-called "income deposits." In her 1942 return petitioner reported gross income of $4,481.20, a much larger figure. With respect to the following years, petitioner reported $4,870 as gross income for 1943, while her net income deposits were only $4,441.86; the reported gross income for 1944, viz., $6,693, exceeded her net deposits in that year which were $5,238.30. In these circumstances, we are satisfied that the bank deposit method does not reflect the correct gross income of petitioner in any of the taxable years before us. We are also satisfied that the gross income reported by petitioner substantially represents her income in each of the taxable years. We reach this result, not only because the reported gross income and the total rental receipts indicated by her business records were practically identical, *145 but also because of testimony to the effect that she had no other regular source of income. With the rejection of respondent's method of determining income based on bank deposits, petitioner, of course, may not take full advantage of any deductions allowed by respondent incident to his determination under that method. It may well be that the deductions set out in respondent's recapitulations contain items traceable to properties found to belong to others than petitioner and the income from which we have held not to be taxable to her. Counsel for the petitioner has requested no specific findings with respect to deductions. He introduced petitioner's record books without endeavoring to analyze or tabulate their contents by other evidence or on brief. We have determined the total receipts and expenses as they appear on petitioner's books as best we could in the circumstances. Petitioner's records support a finding of expenditures of $1,180.68 for 1942, $806.16 for 1943, and $2,185.31 for 1944, and these expenditures, in our opinion, constitute ordinary and necessary expenses of carrying on petitioner's business of operating rooming houses. After careful consideration we have also *146 concluded that petitioner is entitled to deduct the contributions, interest expense, and local tax payments as claimed on her 1942 and 1943 returns. The partial disallowance by respondent of these items appears at best to be based solely on his treatment of these items under the bank deposit method adopted by him. For 1944 petitioner took the standard deduction allowed by section 23 (aa)(1)(B) of the Code and this should be considered in determining her net income for that year. Depreciation in the amount of $187.50 was claimed by petitioner in 1944 on property acquired by her on December 22, 1943. As this item is not disputed it should be allowed. Depreciation was not claimed by petitioner on another property purchased by her in 1920, but it is entirely possible that this latter property was fully depreciated prior to 1942. Respondent imposed a 50 per cent penalty on petitioner for each of the taxable years, pursuant to section 293(b) of the Code. We are convinced from the evidence presented that petitioner did not fraudulently understate her income on her returns with intent to evade tax and therefore hold that she is not subject to the penalties asserted. She may have been negligent *147 but no penalty for this reason is requested. In view of the elimination of the fraud penalties, the recomputation under Rule 50 should give effect to the forgiveness features of the Current Tax Payment Act of 1943. Decision will be entered under Rule 50.